UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Jan Cramer,** | Civil No. 07-725 (DWF / SRN) |
| **Plaintiff,** | |
| v. | **REPORT & RECOMMENDATION** |
| **Dr. Iverson, et al.,** | |
| **Defendants.** | |

---

Jan Cramer, Pro se.

Mary Jo Madigan, Assistant U.S. Attorney, 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN, 55415, for Defendants.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

This matter comes before the undersigned United States Magistrate Judge on Defendants' Motion To Dismiss (Doc. No. 28), as well as Plaintiff's Motion to Add an Additional Defendant (Doc. No. 21), Plaintiff's Motion for Summary Judgment (Doc. No. 27), and Plaintiff's Motion to Order Medical Care or, In the Alternative, Immediate Release from Confinement (Doc. No. 54).[1] The matter has been referred to the undersigned for a Report and Recommendation

---

[1] Although Defendants' motion itself was titled simply as one to dismiss, their accompanying memorandum is denominated as being in support of a "motion to dismiss, or alternatively for summary judgment" and requests that this action "be dismissed or summary judgment entered on defendants' behalf." (Doc. Nos. 28 & 29.) They also filed numerous affidavits, including affidavits of all but one of the thirteen medical providers and administrators accused of deliberate indifference to Plaintiff's medical needs. (Doc. Nos. 30-41.) In response, Plaintiff filed a "Reply to Defendants Motion For Summary Judgment," contending that genuine issues of material fact preclude summary judgment. (Doc. No. 50.) Moreover, he supported his memorandum with an affidavit and what appears to be the bulk, if not the entirety, of his prison medical records. (Doc. Nos. 51 & 52.) Defendants thus provided Plaintiff with notice of the possibility for conversion from a Rule 12 to a Rule 56 motion. Davis v. Johnson Controls, Inc., 21 F.3d 866, 867 (8th Cir. 1994). Plaintiff's response–expressly opposing summary judgment on the purported basis of genuine issues of material fact and supported by extensive exhibits–confirms his understanding that Defendants sought summary judgment. The Court finds that this factual record, in conjunction with the materials Plaintiff filed along with his

pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1(a).  For the reasons stated below, the Court recommends that the Defendants' motion to dismiss be denied but their alternative motion for summary judgment be granted, and that Plaintiff's motions be denied (partially as moot).

**I.      FACTUAL AND PROCEDURAL HISTORY**

Federal prisoner Jan Cramer has been incarcerated since November 8, 2001, first at the Federal Medical Center in Rochester, Minnesota ("FMC–Rochester"), then at the Federal Correctional Institute in Waseca, Minnesota ("FCI–Waseca"), and presently at the Federal Prison Camp in Duluth, Minnesota ("FPC–Duluth").  In February 2007, Cramer filed this Bivens action against numerous prison officials and employees–three physicians, two other health care providers, four administrative personnel, and four wardens–claiming a violation of his Eighth Amendment right to be free from cruel and unusual punishment.  (Doc. No. 1.)   Named as Defendants are:  (1) several individuals at FMC–Rochester:  Dr. Iveldson (a physician), Jim Gierok (a respiratory therapist), and David Good and Whitney LeBlanc (wardens); (2) one physician at FCI–Waseca: Dr. Mark Grey; (3) numerous individuals at FPC–Duluth: Dr. Abigail Lopez de LaSalle (a physician), Phil Polzin (a physician's assistant), Ronald L. DeFrance (the health services administrator), Bruce Barton (the clinical director), and John Caraway and Donald Stine (both wardens); and (4) two regional or national federal prison officials:  Michael Nalley (the regional director for the North Central Regional Office of the Federal Bureau of Prisons), and Harrell Watts (the national inmate appeals administrator for the Bureau of Prisons).

Plaintiff asserts that he was diagnosed as suffering from sleep apnea, a condition

---

Complaint (Doc. No. 2), provides a sufficient basis on which to rule on Defendants' motion for summary judgment.  See Fed. R. Civ. P. 12(d) (authorizing conversion of Rule 12(b)(6) motion into Rule 56 motion where matters outside of the pleadings are considered).

involving cessation of breathing while asleep, since at least early 2001, that is, before his current incarceration. At bottom, he claims that all thirteen Defendants were deliberately indifferent to his medical condition, contending that the various health care providers failed to properly treat his sleep apnea, and that the various administrators failed to ensure that those providers treated his condition. (Doc. No. 1.) He claims that (1) Dr. Iveldson retracted his offer to treat him with a C-PAP machine, (2) Gierok failed to respond to his request for treatment, (3) Warden Good likewise failed to respond to such a request, (4) Warden LeBlanc never responded to a similar request, (5) Dr. Gray forgot to make an appointment for him to see a respiratory specialist, (6) Polzin refused to schedule him to see a physician because he was overweight, (7) DeFrance returned his request for an appointment with a specialist because DeFrance claimed he was not qualified to make such clinical decisions, (8) Dr. Barton refused to follow a private physician's recommendation for a sleep study, (9) Warden Caraway (on behalf of Warden Stine) denied his request for treatment because he had failed to reduce his weight as instructed, (10) Nalley rejected his administrative appeal, (11) Watts similarly rejected his subsequent administrative appeal, and (12) Dr. LaSalle denied his requested treatments because he needed to first try to lose weight. (Id.)

In August of 2007, Plaintiff filed a motion to add as an additional Defendant Brian White, a prison employee at FPC–Duluth, claiming that Defendant LaSalle ordered "White of the medical department at the Duluth Prison Camp to properly administer a c-pap machine to the Plaintiff" to treat Plaintiff's sleep apnea, but that White "knowingly failed to obtain qualified professionals to administer the c-pap equipment to the Plaintiff." (Doc. No. 21.) In October of 2007, Plaintiff moved for summary judgment, contending that Defendants had failed to file their Answers, thereby waiving "their rights to contest any of [his] claims." (Doc. No. 27.) A week

3

later, Defendants moved to dismiss or, in the alternative, for summary judgment. (Doc. No. 28.) Finally, in July of 2008, Plaintiff moved for an order directing prison officials to provide him "medical care for his sleep apnea or in the alternative [that he] be immediately released from confinement in order to seek and obtain medical care." (Doc. No. 54.)

## II.    DISCUSSION

Defendants move for summary judgment on the following grounds with respect to the following particular officials and employees:  (1) that DeFrance is entitled to Absolute Immunity under 42 U.S.C. § 233(a); (2) that Gierok, Good, LaFrance, Stine, Nalley and Barton had no personal involvement in the allegedly unconstitutional conduct; (3) that Watts is not subject to personal jurisdiction in Minnesota; (4) that Plaintiff did not administratively exhaust his claims against Gierok, Iveldson, Good, LeBlanc, Gray, Stine and LaFrance; (5) that all Defendants but Gierok were not properly served; (6) that Plaintiff failed to state a claim for deliberate indifference against any of the Defendants; and (7) that all Defendants are subject to qualified immunity. (Doc. No. 29.) The Court need not address most of these arguments because Plaintiff has no cognizable claim against any of the Defendants for deliberate indifference under the Eighth Amendment.[2]

With respect to such a claim of deliberate indifference, the Court applies the same standard as it would in addressing a motion for summary judgment in any other context. The court considers "the facts in the light most favorable to the nonmoving party" and grants summary judgment only where "no genuine issues of material fact exist and the moving party is entitled to judgment as a mater of law." <u>Meuir v. Greene County Jail Employees</u>, 487 F.3d

---

[2] Although Plaintiff initially filed suit claiming each Defendant was liable in both their official as well as individual capacity, he now concedes that the "claims against the defendants in their official capacity are barred." (Doc. No. 50, at 36.)

1115, 1118 (8th Cir. 2007).

It is now beyond dispute that the protections afforded by the Eighth Amendment's Cruel and Unusual Punishment Clause extend beyond the sentence imposed on a criminal defendant to also encompass the conditions of confinement at a federal prison. Thus a federal prisoner may premise an Eighth Amendment claim on (among other things) the "deliberate indifference to serious medical needs" as "manifested by prison doctors in their response to the prisoner's needs" and thereby state a cause of action under Section 1983. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). But not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. In the present context,

> an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.

Id. at 105-06. In short, allegations of mere negligence do not suffice; "to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106 & n.14. Accord Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (stating that "[m]ere negligence or medical malpractice" is "insufficient to rise to a constitutional violation"); Hart v. Bertsch, 529 F. Supp. 2d 1032, 1038 (D.N.D. 2008) ("This entails a showing of something more than mere negligence or medical malpractice.").

Thus, a "prima facie case alleging such deliberate indifference requires the inmate-plaintiff to demonstrate that he suffered from an objectively serious medical need and that prison officials actually knew of, but deliberately disregarded that need." Meuir v. Greene County Jail Employees, 487 F.3d 1115, 1118 (8th Cir. 2007). This standard "involves both an objective and a

5

subjective component:" that is, (1) that the prisoner "suffered objectively serious medical needs," and (2) "that the prison officials actually knew of but deliberately disregarded those needs." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997).[3] To survive summary judgment, such a plaintiff faces "a substantial evidentiary threshold to show that the prison's medical staff deliberately disregarded the inmate's needs by administering an inadequate treatment." Meuir, 487 F.3d at 1118.

Here, even assuming that Cramer's claimed sleep apnea constitutes a serious medical need, there is no showing that prison officials deliberately disregarded that need. In support of his Complaint, Cramer submitted such materials as various medical records, complaints to prison officials and responses thereto, affidavits of other inmates who purported to observe Cramer's difficulty breathing while sleeping and his own notes regarding his breathing problems. (Doc. No. 2 (Aff. of Jan Cramer).)

These materials, taken as true, establish that (1) in January 2001, a private physician diagnosed Cramer as suffering from sleep apnea before he was incarcerated, (2) Cramer told prison officials of his belief that he suffered from serious breathing problems while asleep, (3) a private physician at the Duluth Clinic noted in July 2004 that his claim of sleep apnea could be evaluated at a program at that facility but that he would "leave it to Dr. Barton," the clinical director at FPC–Duluth, (4) that in August 2004 a prison official concluded that Cramer was "not a candidate at this time for sleep apnea study per review by the clinical director," (5) that Cramer informed prison officials that he did not "believe Dr. Barton is a Specialist in this area" and requested a consultation by such a specialist to determine if he was a candidate for a sleep study,

---

[3] For purposes of the present motions, this Court will assume that sleep apnea constitutes a sufficiently serious medical condition.

6

and (6) that he consistently disputed various physicians' conclusions that his weight was a causal factor relevant to his condition. (Doc. No. 2, Exs. A-E, G-I, K, & M.)  But even if such allegations could suffice to state a claim for negligence, such claims are not redressable under the Eighth Amendment.

A July 2004 evaluation by Dr. Krook of the Duluth Clinic noted Cramer's complaint of sleep apnea and stated that "this can be evaluated.  There is a program here at SMDC and I will leave it to Dr. Barton." (Doc. No. 2, Ex. H.)  Cramer complained about Dr. Barton's alleged statement that Cramer was not a candidate for a sleep apnea study, contending that Dr. Barton was not a specialist in that area.  (Id., Exs. I & K.)[4]

Warden Stine's September 2004 response to Cramer's request for an administrative remedy notes that when Cramer was seen in May 2004 regarding his sleep apnea complaints, he was "counseled regarding diet, exercise, and weight loss, as the first steps in any potential therapy," further noting Cramer's "increase in weight, contrasted to the recommended loss." (Id., Ex. L.)[5]  Although Warden Stine partially granted Cramer's request regarding treatment of his leukemia, the Warden found that Cramer has "not been reducing [his] weight as instructed by

---

[4] Dr. Barton states that he was the Clinical Director at FPC-Duluth from December 1999 to June 2004 and that he "never denied any suggestion or recommendation by a hematologist on July 13, 2004, for an evaluation of the plaintiff's need for diagnosis and treatment of sleep apnea," clarifying that he "was not working at the FPC during that time" and "had no direct or indirect personal involvement in the decision to refrain from conducting a sleep apnea study following the hematologist's suggestion or recommendation." (Doc. No. 37.)

[5] Warden Stine, the Warden at FPC–Duluth from February 23, 2003, to October 16, 2004, states that he had "no direct personal involvement in answering the request" because it "was answered by Associate Warden Caraway on [Stine's] behalf." He further states that he is "not a licensed or trained medical professional," that he "relied upon the members of the medical staff at the FPC to provide proper medical care and treatment for inmates" and that "no members of the medical staff advised [him] of a substantial risk of serious harm to the plaintiff due to lack of diagnosis or treatment of sleep apnea." (Doc. No. 33.)

7

staff to assist with potential sleep apnea" and encouraged Cramer "to make every effort [to] follow the weight reduction and exercise plans as given to you as the first step towards treating the potential sleep apnea, and maintaining good health in general." (Id.)  Warden Stine concluded by noting the procedures for any further requests for medical treatment.

Cramer filed a Regional Administrative Remedy Appeal of that decision, expressly contesting the issue of what role his weight might play in his condition.  (Doc. No. 2, Ex. M.)  The response of Regional Director Michael K. Nalley "found no basis to substantiate [Cramer's] allegations" as his records reflected that he had "been provided ongoing and appropriate evaluations," noting that "the indicated treatments and recommendations have been offered." (Id., Ex. N.)  The response further stated that "[o]verall, sound clinical judgment has been exercised and your healthcare is in compliance with the BOP's Health Services Manual (Program Statement 6000.05)."  (Id.)[6]

Cramer again appealed, filing a Central Office Administrative Remedy Appeal.  (Doc. No. 2, Ex. O.)  The response of Harrell Watts, the Administrator for National Inmate Appeals, stated that Cramer had "not been diagnosed with sleep apnea and the recommendation by the hematologist for a sleep study was not supported by the Clinical Director."  (Id., Ex. P.)[7]  The response further noted that he would "continue to be followed on a regular basis in the chronic care clinic and receive routine laboratory testing for [his] leukemia" and that the record showed that he was "receiving medical care and treatment in accordance with Bureau policy."  (Id.)

In sum, even accepting as true Cramer's version of the facts, he has presented at most a

---

[6] Nalley states that he "never answered the IARP appeal provided to the plaintiff on October 25, 2004," as it was "signed by one of [Nalley's] subordinates."  (Doc. No. 35.)

[7] Watts is "not a licensed or trained medical professional" and "never provided medical care to" Cramer.  (Doc. No. 41.)

8

case of negligence, but not constitutional "deliberate indifference." The Court further notes that it seems highly unlikely that all thirteen of the Defendants were deliberately indifferent to his medical needs, particularly where they are dispersed among several BOP facilities and officers. Moreover, it likewise seems highly unlikely that such Defendants would be deliberately indifferent to his sleep apnea, yet treat his leukemia to Cramer's apparent satisfaction.

In addition, Defendants have supported their motion with numerous affidavits regarding the diagnosis and treatment of Cramer. (Doc. Nos. 30-41.) For example, Dr. Iveldson monitored Cramer's medical care and treatment at FMC-Rochester from July 18, 2002, to April 10, 2003, focusing on his "primary concern" for Cramer's leukemia condition, which was successfully treated. (Doc. No. 34.) Regarding Cramer's reports of experiencing daytime sleepiness about one day per month, Dr. Iveldson concluded "that no sleep study was indicated for the plaintiff because he did not complain of frequent daytime sleepiness," further noting that Cramer "never complained of any serious medical care need for immediate treatment of sleep apnea." (Id.) He thus concluded that Cramer "did not require any referral to a specialist to treat sleep apnea." (Id.) Moreover, Dr. Iveldson notes that "plaintiff was not formally diagnosed as suffering from sleep apnea until March 13, 2007, when he was confined at" FPC-Duluth and that "he received a CPAP device [to treat that condition] at that time."[8]

---

[8] Cramer complains that Dr. Ilvedson earlier denied him a C-PAP machine because it was too costly. (Doc. No. 50, at 4; Doc. No. 51.) Cramer contends the cost of treatment is not a valid basis for denying that treatment. But Kosilek v. Maloney, on which Cramer relies for this proposition, provides no authority for its assertion that it is impermissible "to deny an inmate adequate medical care because it is costly." 221 F. Supp. 2d 156, 161 (D. Mass. 2002). Moreover, insofar as any treatment involves some assessment of a cost-benefit analysis, the court's statement in Kosilek seems incompatible with both the principle that a prisoner's disagreement with a prison physician's course of treatment is no basis for an Eighth Amendment claim as well as the rule that a prisoner is not entitled to unqualified health care. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)).

Dr. Mark Gray, the Clinical Director at FCI–Waseca, monitored Cramer's medical care and treatment while he was confined at that facility from April 10, 2003 to April 13, 2004. (Doc. No. 31.) Dr. Gray states that after he discussed Cramer's "past history of apparent sleep apnea with him on April 22, 2003," Cramer never advised him of any need for "immediate treatment for sleep apnea," noting that Cramer met with medical care providers several times over the next year but "did not complain of fatigue" or "report suffering from any severe symptoms of sleep apnea." (Id.) Dr. Gray further notes that when he met with Cramer for the last time on April 6, 2004, he "specifically advised him to lose weight and engage in regular exercise and to reduce the salt intake in his diet." (Id.) Dr. Gray observes that Cramer "was overweight and obesity is one of the recognized potential causes of airway obstruction that contributes to cause sleep apnea." (Id.)

Similarly, Phil Polzin, a Physician's Assistant at FPC–Duluth, met with Cramer on May 10, 2004, regarding his complaints about difficulty with sleeping and "observed that the plaintiff was obese." (Doc. No. 36.) Polzin educated Plaintiff "on the need to watch his diet, to exercise and to lose weight," noting that weight loss "is a self-help treatment that can dramatically improve the quality of sleep." (Id.) Polzin further notes that his review of Cramer's medical records disclosed that Cramer "did not receive an evaluation from a specialist in diagnosis or treatment of sleep apnea while he was confined at" FCI–Waseca before being transferred to FPC–Duluth on April 13, 2004, and that "[h]is medical problems at the time of his transfer from the FCI to the FPC did not include treatment for sleep apnea." (Id.)

Dr. Abigail Lopez de LaSalle states that she monitored Cramer's medical care and treatment while he was confined at FPC-Duluth from January 2006 until 2007 and that he "had no work-up to determine if he required treatment for sleep apnea prior to his transfer to" Duluth.

(Doc. No. 30.) She confirms Dr. Gray's assessment of Cramer not having reported suffering from severe sleep apnea in 2003 and 2004, and that Cramer was "consistently advised to lose weight and to engage in exercise" as an "accepted from of self-help treatment" for sleep apnea. Based on Cramer's medical records and his own statements, she concluded that he "did not suffer from a serious medical care need for immediate treatment of sleep apnea while he was confined at the FCI or when he arrived at the FPC on April 13, 2004." (Id.)

She further states that after she assumed responsibility for his care and treatment in January 2006, she advised him to control his diet and again advised him to lose weight when he complained of difficulty sleeping in June 2006. (Id.) "Because the plaintiff did not demonstrate the ability to consistently lose weight," she recommended a sleep study on February 8, 2007. (Id.) After that study confirmed his sleep apnea, she "diagnosed him as suffering from it on March 13, 2007. A CPAP device was promptly issued to him for treatment of the condition." (Id.)[9]

---

[9] With respect to the remaining Defendants, Warden Caraway states that he "was never aware of any deficiency concerning [Plaintiff's] medical care and treatment for sleep apnea" and also notes that he "had no medical expertise concerning the treatment of the condition." (Doc. No. 39.) Similarly, Whitney LeBlanc, who served as the warden at FMC–Rochester, states that he is "not a licensed, trained medical professional" and thus "did not provide medical care or treatment to inmates." (Doc. No. 40.) He further asserts that he "was never aware that any members of the medical staff . . . failed to provide proper medical care and treatment to the plaintiff for sleep apnea." (Id.) Ronald DeFrance states that he is a pharmacist at FPC–Duluth, "not a physician," and "not a specialist in the diagnosis or treatment of sleep apnea." (Doc. No. 38.) Moreover, while responding to Cramer's request to see a specialist, DeFrance states that he "correctly advised [Cramer] that the decision to refer him to a specialist was a clinical decision that [DeFrance] had no authority to make because [he] was not a physician." (Id.) Likewise, Jim Gierok, a respiratory therapist at FMC–Rochester, states that he only "provides services to inmates based on an order by a physician to provide respiratory therapy services to inmates" and that he was never directed by any physician to provide such services to Cramer. (Doc. No. 32.) He further states that even if he received Cramer's alleged request for treatment, he "would have been unable to provide any treatment to the plaintiff unless/until an order was issued by a physician authorizing" him to provide such treatment. (Id.)

The C-PAP machine was issued to Plaintiff by Brian White, a prison employee who is not a physician, whom Plaintiff has moved to add as a Defendant. (Doc. No. 21.) Plaintiff essentially asserts that White obtained the machine from "an unqualified source" (apparently because it is a "rental company"), and that even though White "wasn't qualified to make adjustments" to that machine, he nevertheless did so. (Doc. No. 22.) But the Court concludes that Plaintiff's motion to add White as a Defendant is futile because Plaintiff's allegations against White, like those against the original Defendants, state at most a claim for negligence and do not rise to the level of "deliberate indifference." On this record, any alleged failure to optimize the settings on the C-PAP machine to Cramer's complete satisfaction cannot rise above negligence so as to constitute a constitutional violation. Granted, Cramer is frustrated with the relief that device has offered. But the Eighth Amendment does not guarantee prisoners "'unqualified access to health care.'" Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)).

Cramer's response to Defendants' motion essentially elaborates on the allegations made in his Complaint. (Doc. No. 50.) The exhibits Cramer provided in support of his opposition to summary judgment reflect no deliberate indifference to his sleep apnea but rather an acknowledgment of that condition and a course of treatment for it, albeit one with which Cramer remains largely dissatisfied. (E.g. Doc. No. 52, Ex. C (noting his sleep apnea under "other pertinent health problems or history"), Ex. R-1 (same), Ex. Z-10 (noting Cramer's complaints and instructing him to lose weight).) Cramer's affidavit provides a concise summary of his attempts from August 2002 through April 2007 to obtain a polysomnogram (a sleep study) and treatment with a C-PAP machine. (Doc. No. 51.)

This record discloses no "deliberate indifference" to Cramer's medical needs. In fact, it

reflects that he consistently received medical care and treatment while incarcerated in the various institutions. Cramer clearly disagrees with the precise scope, timing, or nature of the care and treatment he has received, which appears to have been confined initially to nasal spray and the recommendation that he lose weight. But "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). Cf. Hart v. Bertsch, 529 F. Supp. 2d 1032, 1038 (D.N.D. 2008) (granting summary judgment for prison officials on prisoner's claim of failure to treat sleep apnea where prisoner, among other things, "failed to follow through with [his physicians'] recommended treatments" of losing significant weight).

The essence of Cramer's Complaint is that he believes he should have received different or better care. But the courts have consistently maintained that a prisoner's "'mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation.'" Meuir, 487 F.3d at 1118-19 (internal quotation omitted). Accord Estelle, 429 U.S. at 107 (clarifying that decision to order any particular diagnostic procedure or form of treatment "is a classic example of a matter for medical judgment" and that decision to not order such measures "does not represent cruel and unusual punishment").[10]

---

[10] The facts here are quite similar to those in Meuir, where the court accepted the plaintiff's claim that his chronic dental problems constituted an objectively serious medical need, but concluded that "deliberate indifference" to that need could not be based on the fact that plaintiff's repeated requests for a prescription mouthwash were rejected by various nurses who instead encouraged him to brush and gargle with salt water and provided him with Tylenol. 487 F.3d at 1117.

At most, Cramer's Complaint states a claim for negligence.[11]  Granted, some medical decisions that a prisoner disagrees with might constitute negligence, but such claims are properly brought only under the applicable tort claims statute and do "not become a constitutional violation merely because the victim is a prisoner."  Estelle, 429 U.S. at 106, 107.

But nothing in the record evidences the requisite state of mind of prison officials that could elevate his claim to the level of one for deliberate indifference to his medical needs. Cramer's claim fails to meet the state-of-mind standard for maintaining such an Eighth Amendment action, which requires facts that could establish the requisite type and degree of subjective culpability.  As the Supreme Court has clarified, the "deliberate indifference" necessary to support an Eighth Amendment claim requires a "showing that the official was subjectively aware of the risk."  Farmer v. Brennan, 511 U.S. 825, 828 (1994).

> A prison official violates the Eighth Amendment only when two requirements are met.  First the deprivation alleged must be, objectively, "sufficiently serious" . . . .  The second requirement follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment."  To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind."  In prison-conditions cases that state of mind is one of "deliberate indifference to inmate health or safety."

Id. at 834 (internal citations omitted).  This requires "a state of mind more blameworthy than negligence"–that is, "Eighth Amendment liability requires 'more than ordinary lack of due care for the prisoner's interests or safety.'"  Id. at 835 (quoting Whitney v. Albers, 475 U.S. 312, 319 (1986)).

The Court expressly rejected "an objective test for deliberate indifference," holding instead that a prison official cannot be liable under the Eighth Amendment

> unless the official knows of and disregards an excessive risk to inmate health or

---

[11] This Court takes no position, of course, on the merits of any such claim.

> safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Id. at 837. In short, a plaintiff must establish "subjective recklessness as used in the criminal law." Id. at 839. The Court cautioned that under this "requirement of subjective culpability," it is "not enough merely to find that a reasonable person would have known, or that the defendant should have known" of the risk. Id. at 843 n.8. And even actual knowledge of the risk coupled with the occurrence of the harm posed by that risk does not result in liability if the prison official acted reasonably. Id. at 844-45. In sum, a prison official may be held liable under the Eighth Amendment "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847.

In conclusion, Cramer has not stated any viable constitutional claim of "deliberate indifference" to his medical needs. Nothing here amounts to the "unnecessary and wanton infliction of pain" or is otherwise "repugnant to the conscience of mankind" so as to constitute an Eighth Amendment violation under Estelle, 429 U.S. at 105-06.

This leaves Plaintiff's various motions, but this Court's resolution of Defendants' motion dictates the resolution of each of Plaintiff's motions. The basis for granting summary judgment in favor of the original Defendants likewise extends to Brian White. Accordingly, Plaintiff's motion to add White as a Defendant is denied as futile. Williams v. Little Rock Municipal Water Works, 21 F.3d 218, 224 (8th Cir. 1994) (noting that amendment may be denied if proposed claim is futile); Thompson El v. Jones, 876 F.2d 66, 67 (8th Cir. 1989) (same). Plaintiff's motion for summary judgment, based on Defendants not having filed answers at that time, is now moot in light of this Court's grant of summary judgment to Defendants. Finally, Plaintiff's motion to compel the medical care he claimed he was entitled to (or in the alternative to be released) is

likewise also moot.

### III.    RECOMMENDATIONS

Based on the foregoing, and all the files, records and proceedings herein, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss (Doc. No. 28) be DENIED;

2. Defendants' motion for summary judgment (Doc. No. 28) be GRANTED;

3. Plaintiff's motion to add an additional defendant (Doc. No. 21) be DENIED;

4. Plaintiff's motion for summary judgment (Doc. No. 27) be DENIED AS MOOT;

and

5. Plaintiff's motion to order medical care or, in the alternative, to be released (Doc. No. 54) be DENIED AS MOOT.


Dated:  September 19, 2008

    s/ Susan Richard Nelson

SUSAN RICHARD NELSON
United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by October 6, 2008, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.